IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| CYNTHIA CHUZIE-MCDOWELL,<br>      Plaintiff | No. 1:23-CV- 97 |
| v. | |
| TRI-STATE PAIN INSTITUTE, LLC,<br>      Defendant | |
| | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiff, Cynthia Chuzie-McDowell, by counsel, and for her Complaint against Tri-State Pain Institute, LLC, respectfully represents:

### I.      Parties; Jurisdiction:

1.      Plaintiff is Cynthia Chuzie-McDowell, a 58 year old white female residing at Cranesville, Erie County, Pennsylvania within the Erie Division of the Western District of Pennsylvania.

2.      Defendant Tri-State Pain Institute, LLC, ("Tri-State Pain") is a company organized under the laws of the Commonwealth of Pennsylvania.  It maintains its office and principal place of business at 5442 Peach Street, Erie, Erie County, Pennsylvania 16509, within the Erie Division of the Western District of Pennsylvania.  Tri-State Pain has more than 15 and fewer than 50 employees.

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, this being a case arising under the constitution, laws, and treaties of the United States, and

particularly Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e.

4. Jurisdiction of this case is properly in the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b), this being the District where all parties reside, a substantial part of the events or omissions giving rise to the claim occurred, and there is no other district in which this action may be brought.

5. This case is properly within the Erie Division of the Western District pursuant to LCvR 3, in that both Plaintiff and Defendant reside in Erie County and the claim arose in Erie County.

6. Plaintiff has satisfied all conditions precedent to the filing of this Complaint in that she filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"), at Charge No. 533-2022-02505, which was cross-filed with the Pennsylvania Human Relations Commission. A Notice of Right to Sue was requested and issued on January 18, 2023.

## II.     Facts:

7. Plaintiff began her employment with Employer on or about March 21, 2022, initially on a part-time basis with an understanding that within a few weeks, she would transition to full-time.

8. From the beginning of her employment, Plaintiff was subjected to a hostile and/or offensive work environment based on gender and was subjected to disparate treatment based on gender. Specifically, the principal of Defendant, Joseph M. Thomas, MD, a male ("Dr. Thomas") frequently questioned Plaintiff concerning sexual relations between her and her husband, Steven Grettler ("Steve"). He also inquired of Plaintiff's sister-in-law, Laura McQuillan ("Laura") regarding sexual activity between Plaintiff and

Steve, Laura's brother. These inquiries occurred on more than one occasion, including on or about April 12, 2022 when Dr. Thomas inquired of Laura about how much money Steve makes, how much property Plaintiff and Steve own, and if Plaintiff and Steve were happily married.

9. On or about April 22, 2022, Dr. Thomas, in Plaintiff's presence, told a patient's daughter, while holding his genitals, "I don't know if I can concentrate on your mom, you're so damn beautiful." Plaintiff heard this comment and reported it to Charlene Heisler ("Char") the office manager.

10. On or about April 25, 2022, Dr. Thomas stated to Plaintiff "If you stay on keto and lose some weight, you'll be f***ing hot."

11. On or about April 26, 2022, Dr. Thomas told Plaintiff "If you don't get patients, I'll kick your f***ing ass to the curb. You think I'm gonna pay you?" Plaintiff complained about this behavior to Char and was informed: "This is nothing, just wait."

12. To maintain his dominance, Dr. Thomas intimidated the staff into avoiding conversation with each other in his presence.

13. On or about April 27, 2022, Plaintiff was seeing a patient Dr. Thomas had not seen since April of 2021. Dr. Thomas came into the examination room and told the patient "She (Plaintiff) doesn't know anything." He then told the patient how beautiful she was and that he saw her father that day, who was a friend, and stated "He needs a dickectomy. He is a f***ng dick!" When Plaintiff reported this event to Char, Char said she understood but did not want to let Dr. Thomas see them talking because she did not want Dr. Thomas to think they were friends or were talking about him. Dr. Thomas made a comment, in a demeaning tone, when seeing Plaintiff and Char talking "Are you

having a conference without me?"

14. Plaintiff was advised by Char when she began her employment that her 30-minute lunch break was a paid break. On or about April 27, 2022, Dr. Thomas followed Plaintiff during her lunch break and complained to her that he was not paying her for lunch and she was not permitted to eat at her desk.

15. On or about April 27, 2022, while speaking to the office nurse, Loretta, about Dr. Thomas' behavior, the nurse advised Plaintiff, sarcastically, that it would get better, "maybe," and laughed.

16. On or about May 3, 2022, Plaintiff discussed the sexually driven and hostile work environment with Dr. Thomas, a conversation witnessed by Char. Plaintiff complained about her treatment and about Dr. Thomas' repeated sexual remarks. Dr. Thomas responded with a stream of insults, telling Plaintiff that her outfit "looks crazy" and calling her a "nun," stating that she was OCD. He asked Plaintiff if she got along with her husband and told her she wasn't right when she replied that she did get along with her husband. At this point Plaintiff, again, told Dr. Thomas to stop, that the way she was being treated was not acceptable, that it was upsetting and disrespectful and caused her grief and anxiety. Later that day, an administrative staff member, Heather, told Plaintiff she was sorry for how Dr. Thomas treated Plaintiff, after overhearing his statements, and she felt that it was her fault because she had just given him her resignation and he was taking that out on Plaintiff.

17. On or about May 23, 2022, having met Plaintiff's husband on the preceding Saturday, Dr. Thomas stated to Plaintiff "Wow, that husband of yours is a beast. Solid, tough guy. How do you lay under him and have sex? Doesn't he hurt you?"

Plaintiff stated that she was not going to discuss her sex life with Dr. Thomas and that his inquiries were neither appropriate nor acceptable. Dr. Thomas then stated "You don't do that, right? (Do not have sex). Remember Laura is a friend of my girlfriend," insinuating that Laura had told him that Plaintiff and her husband don't have sex and that Laura had conveyed other personal information about Plaintiff's relationship with her husband to Dr. Thomas's girlfriend. Plaintiff then walked away from Dr. Thomas. He then stated, "If you lose five to ten more pounds maybe you'd be hot and he (Plaintiff's husband) would want to have sex with you." Plaintiff told Dr. Thomas to stop talking about her personal information, that it was offensive, and that she did not like it or want it.

18. On the preceding Saturday, Dr. Thomas had discussed with Plaintiff's husband that Plaintiff was "going to make a lot of money here with me. Don't worry." On or about May 23, 2022, Plaintiff asked Dr. Thomas why he raised that topic with Plaintiff's husband and asked him to stop. Dr. Thomas replied to Plaintiff that he wanted her husband to know she was valuable so that "he won't leave your (Plaintiff's) ass."

19. On or about May 26, 2022, Plaintiff and Dr. Thomas had a discussion concerning the treatment plan for a patient. Dr. Thomas stated, "Why don't you f***ing send him to a real doctor if you can't do it?" Plaintiff explained that the patient wanted Plaintiff to ask Dr. Thomas's opinion. Dr. Thomas angrily told Plaintiff "You can't talk to me like you talk to your husband. How does he deal with it?" Plaintiff asked him why he was so mean, and he replied "I'm the boss, I can be. I sign your check." At that point, Plaintiff asked Dr. Thomas if he wanted her to leave because she would not take the abuse. He said, "If you want a paycheck you'd better stay." This confrontation occurred

within the hearing and sight of office staff, peers, Morgan Puruczky, PA-C ("Morgan") and Liam Cunningham, PA-C ("Liam"), and sales representatives, Dan Skelton, Boston Scientific and Tara Friedman from TENS-STIM UNITS who were present in the office. Dr. Thomas stated that Plaintiff was "too sensitive" and "maybe we aren't compatible." Plaintiff agreed to the incompatible comment. For the balance of the day, Dr. Thomas was verbally abusive to other employees in the office. Plaintiff heard him talking to her peer, Morgan about her stating "You're too sensitive, just like that other one (Plaintiff) the blonde." Other staff members, Char, Heather, and Mya Lewis ("Mya"), and peers, Morgan and Liam reported to Plaintiff that Dr. Thomas had talked about her negatively to them. Dr. Thomas advised Plaintiff, later that day, that he was angry this day about something else not with her. Plaintiff stated to him, that it had nothing to do with her and she didn't deserve or want this type of behavior or treatment from him. Plaintiff punched out and left the office for lunch. She phoned her husband for support regarding the events of the day and was extremely upset.

20. When Plaintiff returned from lunch Dr. Thomas asked her if she was still upset. Plaintiff stated "Yes." Dr. Thomas asked Plaintiff why she was upset Plaintiff replied she couldn't take his abuse and disrespect. Dr. Thomas asked Plaintiff if she called her husband, and when she replied "Yes," he stated she shouldn't have done that. Plaintiff said she respected Dr. Thomas as her superior but that she would not take his harassing behavior. He advised Plaintiff to talk to Char about how she felt. Plaintiff agreed.

21. On or about June 2, 2022, Dr. Thomas told Plaintiff she should wear more dresses "like Morgan" , "You're not as hot as Morgan is. If you lose more weight, you'd be f***ing hot!"

22.     Dr. Thomas made sexually suggestive comments to patients telling one patient each time he treated her how fat her "ass" was. This patient advised Plaintiff of this when she accompanied her sister to an appointment on or about June 27, 2022. She stated to Plaintiff, tearfully, that she would never be a patient of Dr. Thomas's again.

23.     On or about June 7, 2022, Dr. Thomas asked Plaintiff if she had sex on her recent weekend trip with her husband and stated to her "because you are acting like it." Plaintiff walked away and later reported to Char how offensive and unwanted this conduct was.

24.     On or about June 2022, when approaching Dr. Thomas in an examination room where he was napping, (he did this often), to discuss a patient, Plaintiff observed Dr. Thomas laying on the examination table with his hands down his pants, appearing to be masturbating. Plaintiff turned immediately to leave when she realized what he was doing. Dr. Thomas then told Plaintiff "Wait, come back, look!" Plaintiff left the room mortified.

25.     On or about June 30, 2022, a male patient who wanted to have his 18-year-old, female daughter seen in the office for a pain condition, expressed his concern to Plaintiff regarding Dr. Thomas's potential treatment of his daughter. He requested that his daughter see Plaintiff, with the understanding that the initial evaluation would possibly have to be done by Dr. Thomas. He agreed to this if he could be present for the examination by Dr. Thomas.

26.     On or about June 30, 2022, Plaintiff was evaluating an elderly, female patient with her son and daughter present. Dr. Thomas entered the examination room and questioned the three of them about the whereabouts of the beautiful daughter who

usually accompanied her mother, the elderly patient, to office appointments. Dr. Thomas ignored the patient, family members, and Plaintiff. He stated this daughter won't give him the time of day and that she wouldn't want anything to do with an old man like him. He left the room never addressing the patient's concerns. The patient, family members, and Plaintiff were very confused and upset by this behavior

27.     On or about June 30, 2022, at the end of the day, Plaintiff advised Char about the day's events. Plaintiff stated to Char if there wasn't a resolution regarding the unwanted abuse and harassment from Dr. Thomas, she would give her two weeks' resignation notice on the next business day and to please advise Dr. Thomas of this.

28.     On or about July 5, 2022, Plaintiff spoke to Dr. Thomas about a patient. Dr. Thomas stated to Plaintiff "Why can't we get along like this all the time?" Plaintiff replied, "I would like that too and I would like to talk about it but, this is not the place and there isn't enough time right now." Plaintiff could tell this made Dr. Thomas upset but she had to see patients. Later this day Dr. Thomas asked Plaintiff "Did you have sex this weekend? You're in a much better mood." Plaintiff spoke to Char and requested a meeting with her, Dr. Thomas, and possibly Michael Smiley, outside HR staff for Tri-State Pain, within that day or the next.

29.     On or about July 6, 2022, upon arriving at work Plaintiff asked Char if Dr. Thomas planned to speak to her today. Char stated that Dr. Thomas would not meet with her but requested she speak to Plaintiff about her concerns along with Margaret, recently hired accounting personnel who had previous HR experience. They met and Plaintiff advised them again of some of her concerns and treatment by Dr. Thomas. When asked by Margaret what her goal outcome was, Plaintiff stated her goal was to have an acceptable resolution for change by Dr. Thomas by the end of the day or she

would offer her two week resignation notice. Dr. Thomas did not offer any resolution by the end of the day.

30. In response to Plaintiff's complaints regarding her treatment and the inappropriate sexual comments by Dr. Thomas, Dr. Thomas embarked on a course of harassment upon Plaintiff in retaliation.

31. The behavior of Dr. Thomas created a sexually charged hostile and offensive work environment. Those who objected to his inappropriate behavior were subjected to verbal abuse.

32. On or about July 7, 2022, Char phoned Plaintiff prior to work, apologized, and stated Dr. Thomas requested that she tell Plaintiff that he accepted her resignation, that the previous day would be considered her last day, that she should not go into the office, her personal belongings would be gathered by Char and arrangements would be made for pick up by Plaintiff.

33. Plaintiff was constructively discharged as the result of and in retaliation for her complaints about the hostile and/or offensive work environment, sexually inappropriate conduct, harassment, and abuse resulting from her opposition to the hostile and/or offensive work environment, sexually inappropriate conduct, harassment, and abuse. As a result of her treatment, she could no longer work at Tri-State Pain.

34. As the result of her discharge, Plaintiff has lost substantial income and benefits.

35. Plaintiff has suffered significant mental anguish as the result of the hostile and/or offensive work environment, sexually inappropriate conduct, harassment, and

abuse and retaliation resulting from her opposition to it.

36. The actions of Tri-State Pain, acting through its principal, Dr. Thomas, violated Title VII of the Civil Rights Act of 1964, as amended, and the Pennsylvania Human Relations Act.

37. The acts of Tri-State Pain, acting through its principal, Dr. Thomas, were done with malice in that Defendant knew its actions were violating the law and were done with reckless indifference to Plaintiff's federally protected rights in that it knew that its actions might violate the law.

38. Plaintiff is entitled to compensation for the damages sustained as the result of the hostile and offensive work environment and her discharge from her employment, as well as back pay, front pay, and attorney's fees.

**COUNT I – CYNTHIA CHUZIE-MCDOWELL vs. TRI-STATE PAIN INSTITUTE – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

39. Plaintiff incorporates by reference the preceding averments of this Complaint as though fully set forth at length.

40. The actions of the Defendant, acting through its principal, Joseph M. Thomas, M.D., violated the provisions of Title VII of the Civil Rights Act of 1964, as amended.

41. As a result of those violations, Plaintiff has suffered the damages set forth above.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount to be determined by a jury, together with back pay, front pay, costs and

expenses of suit, including a reasonable attorney's fee, punitive and exemplary damages, and such other and further relief as the Court deems just.

**JURY TRIAL DEMANDED**

**COUNT II - CYNTHIA CHUZIE-MCDOWELL vs. TRI-STATE PAIN INSTITUTE - VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

42. Plaintiff incorporates by reference the preceding averments of this Complaint as though fully set forth at length.

43. The actions of the Defendant, acting through its principal, Joseph M. Thomas, M.D., violated the provisions of the Pennsylvania Human Relations Act, 43 P.S. §951, as amended.

44. As a result of those violations, Plaintiff has suffered the damages set forth above.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant in an amount to be determined by a jury, together with back pay, front pay, costs and expenses of suit including a reasonable attorney's fee, and such other and further relief as the Court deems just.

**JURY TRIAL DEMANDED**

Respectfully submitted,

MCNAIR LAW OFFICES, PLLC

By:_____
Timothy D. McNair, Esquire
Pa. ID#34304
821 State Street
Erie, PA 16501
(814) 452-0700
(814) 454-2371
tmcnair@mcnairlaw.com